MAX MARX COLOR & CHEMICAL CO. EMPLOYEES' PROFIT SHARING PLAN, and Walter Sichel, Petitioners,

v.

Milton R. BARNES, Kemper Securities Group, Inc., Bateman Eichler, Hill Richards, John G. Kinnard & Company, and Texas Capital Securities, Respondents.

No. 98 Civ. 7652(LAK).

United States District Court, S.D. New York.

Jan. 21, 1999.

solely in socially responsible mutual funds rather than the unrestricted investment plaintiffs here seek.

Timothy J. Dennin, New York City, for Plaintiff.

Jonathan K. Lagemann, New York City, Diane C. Fischer, Ronald P. Kane, Gomberg Kane & Fischer, Ltd., Chicago, IL, for Defendants.

### MEMORANDUM OPINION

KAPLAN, District Judge.

This case calls upon the Court to determine whether an arbitration award should be vacated due to alleged misconduct and manifest disregard of the law by a National Association of Securities Dealers, Inc. ("NASD") arbitration panel.

*Facts*

In March 1997, Max Marx Color & Chemical Co. Employees Profit Sharing Plan (the "Plan")[1] commenced an arbitration before the NASD seeking damages that allegedly resulted from losses in its securities account handled by Milton R. Barnes. The claim named Barnes along with the various brokerage firms at which Barnes was employed and the Plan maintained its account.[2] Also named as claimants were Max Marx Color & Chemical Co. ("Max Co."), the Plan's sponsor, and

---

1. The Plan is a profit sharing plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

2. *See* Dennin Aff. Ex. A. These firms included Kemper Securities Group, Inc. ("Kemper"). Bateman Eichler, Hill Richards ("Bateman"),

Paine Webber, Inc. ("Paine Webber") John G. Kinnard & Company ("Kinnard"), and Texas Capital Securities ("Texas Capital"). Kemper and Bateman merged in September 1991. In 1995, following a management buyout. Kemper changed its name to EVEREN.

Walter M. Sichel in his capacity as trustee and participant of the Plan and as president and shareholder of Max Co.[3]

In the statement of claim, petitioners claimed that the respondents were liable on a number of theories, including breach of ERISA's fiduciary duties of prudence and diversification. unauthorized and excessive trading amounting to fraud, fraudulent concealment, negligent misrepresentation, constructive fraud, and violation of NASD rules of fair conduct. Petitioners claimed also that each of the respondent firms failed adequately to supervise Barnes's activities. The respondent securities firms in turn answered the complaint and filed various other claims. In particular, Kinnard filed a cross-claim against Barnes and a counterclaim against Sichel. EVEREN filed counterclaims against Sichel and Max Co. and a motion to dismiss. Paine Webber filed a counterclaim against Sichel. Texas Capital counterclaimed against both Sichel and Max Co.[4] The counterclaims, in essence, asserted claims for contribution against Max Co. as the Plan sponsor and against Sichel in his capacity as the Plan trustee with responsibility for authorizing all investment transactions. In addition, EVEREN moved to dismiss, arguing that petitioners' ERISA claims were barred by ERISA's statute of limitations and that their other claims were preempted by ERISA.

In a memorandum dated July 14, 1997, the NASD informed the parties that, absent voluntary submission to the jurisdiction of the NASD, Sichel and Max Co. had no standing to require the respondents to submit to NASD arbitration inasmuch as those claimants were not public customers of the respondent NASD member firms.[5] Respondents denounced the decision to remove Sichel and Max Co. from the action arguing, in part, that they had submitted to the NASD's jurisdiction when Sichel filed his statement of claim in his capacity as President and shareholder of Max Co., as a participant in the Plan, and as trustee of the Plan. Sichel and Max Co., however, took advantage of their immediate good fortune and declined the invitation voluntarily to submit to the NASD's jurisdiction.[6] In consequence, the claims by and against Sichel and Max Co. were eliminated from the arbitration.[7]

Subsequent to the removal of Max Co. and Sichel, EVEREN and Kinnard filed motions to dismiss the Plan's statement of claim, arguing in the main that (1) the Plan itself did not have standing under ERISA, and (2) ERISA preempted all of the Plan's other claims.[8] The parties allegedly were invited to submit memoranda and pertinent documents to the NASD arbitrators for consideration of the motions,[9] and oral argument on the respondents' motions to dismiss was set for May 15, 1998 before an arbitration panel (the "Panel"). The Panel allegedly ordered that no witnesses would be permitted to testify or to present evidence during the oral argument.[10]

The arbitration panel rendered its award on July 30, 1998, dismissing the Plan's claim against all of the respondents. The award stated:

"Having considered the Respondents' Motions to Dismiss and arguments with regard to statute of limitations, standing and preemption issues, the panel hereby

---

**3.** Dennin Aff. Ex. A ¶ 3.

**4.** Busscher Aff. Exs. B, C, F.

**5.** *Id.* Ex. F.

**6.** *Id.* Ex. H.

**7.** *Id.* Ex. F.

**8.** Busscher Aff. Exs. L, M. EVEREN contended also that the Plan had no standing for its claim that the respondents violated the NASD

rules of fair conduct in light of the fact that (1) such a claim is predicated on a membership contract between the individual brokerage firms and the NASD or NYSE, and (2) there is no private right of action for violations of self-regulatory rules. *Id.* Ex. L

**9.** Resp. Mem. 9.

**10.** *Id.* ¶ 22.

grants the Motions of each Respondent to dismiss all claims." [11]

Petitioners claim here that the arbitration award should be vacated pursuant to Section 10 of the Federal Arbitration Act ("FAA") [12] on the grounds that the Panel (1) was guilty of misconduct in failing to hear pertinent evidence and in failing to allow petitioners to amend their statement of claim; (2) was guilty of manifest disregard of law; and (3) failed to delineate the basis of the award.

## Discussion

■ As an initial matter, a party moving to vacate an arbitration award faces a high threshold.[13] Arbitration awards generally are accorded great deference.[14] Judicial review of arbitration awards is necessarily narrowly limited in order to avoid "undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." [15]

### Alleged Misconduct

#### Refusal to Hear Testimony

■ A district court may vacate an arbitration award when the arbitration panel is "guilty of misconduct in ... refusing to hear evidence pertinent and material to the controversy; or of any other misbehav-

ior by which the rights of any party have been prejudiced." [16] This has been interpreted to mean that the federal courts will not pursue evidentiary review of arbitration proceedings unless fundamental fairness is violated.[17] That is to say, "an arbitrator 'need not follow all the niceties observed by the federal courts' " in making his or her evidentiary determinations.[18] An arbitration panel has broad discretion as to whether to hear evidence at all and need not compromise speed and efficiency, the very goals of arbitration, by allowing cumulative evidence.[19] What is required is that each party be given an opportunity to present its evidence and argument.[20]

■ Petitioners contend that this Court should vacate the arbitration award because the Panel refused to hear certain testimony at the May 15 oral argument. They cite two batches of evidence allegedly pertinent and material to the controversy. First, petitioners contend that they were precluded from presenting testimony regarding when they had actual notice concerning defendants' illegal conduct.[21] This, petitioners argue, was pertinent and material because the Panel dismissed their ERISA claim based in part on the expiration of ERISA's statute of limitations.[22] This argument, however, is misguided. The evidence in question was evidence that

11. Dennin Aff. Ex. I.

12. 9 U.S.C. § 1 *et seq.* (1998).

13. *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997).

14. *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir.1997) (citing *Ethyl Corp. v. United Steelworkers of America, AFL–CIO–CLC*, 768 F.2d 180, 183 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986)).

15. *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998).

16. 9 U.S.C. § 10(a)(3).

17. *Tempo Shain Corp.*, 120 F.3d at 20.

18. *Id.* (citing *Bell Aerospace Co. Div. of Textron v. Local 516*, 500 F.2d 921, 923 (2d Cir.1974)).

19. *Areca, Inc. v. Oppenheimer & Co., Inc.*, 960 F.Supp. 52, 55 (S.D.N.Y.1997) (citations omitted).

20. *Tempo Shain Corp.*, 120 F.3d at 20 (citing *Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34 (1st Cir.1985)).

21. Pet. Mem. 4–5.

22. *Id.* ERISA's statute of limitations provision, 29 U.S.C. § 1113(2), provides that no action may be brought three years subsequent to a claimant's actual knowledge of the breach or violation.

already had been presented to the Panel in respondents' written submissions.[23] It is precisely this sort of cumulative presentation that an arbitration panel need not hear. Petitioners confuse the Panel's failure to be persuaded by their evidence with a failure to consider their evidence.[24]

Petitioners next contend that the Panel refused to hear evidence pertinent and material to two open issues of fact: (1) the primary source of investment decisions, and (2) whether the defendant broker-dealers owed certain fiduciary duties to petitioners.[25] Petitioners, however. do not explain the materiality of such evidence to the motion to dismiss. And indeed they cannot. The motion to dismiss was brought on the issues of standing, statute of limitations and preemption; the Panel stated that its decision was predicated on those issues. Petitioners apparently fail to recognize that the Panel need not address every question presented in the controversy on a motion to dismiss, and that there is no misconduct in dismissing a claim—and not receiving evidence—on matters unnecessary to disposition of the claim. In consequence, there was nothing unfair in the Panel's decision not to hear testimony at the May 15 hearing and thus no misconduct for purposes of Section 10(a)(3).

*Denial of Leave to Amend*

Petitioner next claims that the Panel was guilty of misbehavior for refusing to permit petitioners to amend the complaint to add a beneficiary of the Plan, or to rename Sichel, as a claimant. This request was made only in a footnote to petitioners' memorandum of law in opposition to respondents' motion to dismiss.[26]

Misbehavior cognizable under Section 10(a)(3) "must amount to a denial of fundamental fairness of the arbitration proceeding," a denial without reasonable basis.[27] Such conduct "typically arises where there is proof of either bad faith or gross error on the part of the arbitrator."[28] If it were otherwise, " 'the ostensible purpose for resort to arbitration, which is the avoidance of litigation, would be frustrated.' "[29] Accordingly,· in evaluating arbitrators' actions. courts apply a fairness standard.[30] Here, the Panel's decision not to allow petitioners to add claimants to the statement of claim was not unreasonable, nor is there any evidence that the decision was the product of bad faith or gross error.

Sichel was a party to the claim initially, but allowed himself to be removed from the action due to his non-customer status

---

**23.** *See* Dennin Aff. ¶¶ 24–27, 29 & Ex. H, I. Moreover, petitioners do not allege that they were prevented from submitting evidence on this matter prior to the argument, but only that the Panel placed limitations on the presentation of evidence at the oral argument. The law requires only that the parties be given *an* opportunity to present their evidence, not that they be given every opportunity.

**24.** The Court notes also that evidence regarding when petitioners became aware of any alleged ERISA violation is only material to the statute of limitations issue raised only by EVEREN. And in light of the fact that it was an alternative ground for dismissing the Plan's ERISA claim against EVEREN, see *supra* at 255, the materiality of such evidence to any portion of the motion to dismiss is questionable.

**25.** Pet. Reply Mem. 5–6.

**26.** *See* Dennin Aff. Ex. H.

**27.** *Gordon Capital Corp. v. Jesup, Josephthal & Co., Inc.*, No. 91 Civ. 3821(MBM), 1992 WL 41722, *1 (S.D.N.Y.1992).

**28.** *Agarwal v. Agrawal*, 775 F.Supp. 588, at 590 (E.D.N.Y.1991) (citing *United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 40, 108 S.Ct. 364, 372, 98 L.Ed.2d 286 (1987)), *aff'd*, 969 F.2d 1041 (2d Cir.1992).

**29.** *Shamah v. Schweiger*, 21 F.Supp.2d 208 (quoting *C.A. Tinaway v. Merrill Lynch & Co. Inc.*, 658 F.Supp. 576, 578 (S.D.N.Y.1987)).

**30.** *See In Matter of Petition of Perahia v. Caserta*, 1992 WL 162825, *2 (S.D.N.Y.1992) (citing *Reichman v. Creative Real Estate Consultants, Inc.*, 476 F.Supp. 1276 (S.D.N.Y.1979)).

following the filing of respondents' counterclaims against him. The NASD stated that it could not force Sichel to submit to its jurisdiction, but that he was entitled to do so voluntarily. Sichel declined the invitation, opting not to be a part of the action.[31] In consequence, petitioners made a strategic decision to remove Sichel from the action in what appears to have been an effort to frustrate respondents' counterclaims. That this strategy ultimately backfired is of no moment. The arbitration process is intended to facilitate speedy resolutions to parties' disputes. Sichel's antics of attempting to rejoin as a claimant, or to add a beneficiary to the claim, threatened to transform the arbitration process into a protracted legal process contrary to its very purpose. In any case, petitioners failed properly to raise the issue before the Panel by burying the point in a footnote.[32]

There is no basis for vacating the award for misbehavior.

*Alleged Manifest Disregard of Law*

Petitioners next claim that the Panel acted in manifest disregard for the law in dismissing the claim for lack of standing. Petitioners' argument is, in essence, that: (1) the NASD code of arbitration procedure allows for all claims to be heard by an arbitration panel; (2) the Plan therefore had the right to bring its ERISA claim in the NASD arbitration; and (3) ERISA § 502(d)(1)[33] confers standing on employee benefit plans to bring any ERISA claim so long as the adjudicative body has independent jurisdiction over the action. The Panel's decision dismissing the claim, in

part on the basis of standing, thus allegedly was in manifest disregard of law.

In order to overturn an award on the basis of manifest disregard of law, one must show "more than error or misunderstanding with respect to the law."[34] Instead,

"[t]he error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing principle but decides to ignore or pay no attention to it."[35]

Petitioners' argument fails under this standard.

■ First, to the extent that petitioners' claim is that the Panel disregarded NASD rules, it is meritless. NASD rules are not "law."[36] Petitioners must point to a statutory violation to warrant vacatur of an arbitral award, not a violation of the code of arbitration procedure.

■ Second, the Panel did not deny petitioners their alleged right to bring their ERISA claim in the arbitration proceeding. The Plan raised the claim, and nothing in the arbitration award indicates that the Panel dismissed it based on its own jurisdictional limitations. Rather, the Panel stated only that it dismissed the claim in consideration of respondents' arguments "with respect to statute of limitations, standing, and preemption."[37] Respondents' standing argument was that there was no cause of action available to

---

31. *See* Busscher Aff. Ex. H (letter from Dennin to the NASD informing of Sichel's decision not to submit to the NASD's jurisdiction).

32. *See, e.g., Norton v. Sam's Club, Inc.,* 145 F.3d 114, 117 (2d Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 511, 142 L.Ed.2d 424 (1998).

33. 29 U.S.C. § 1132(d)(1).

34. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986).

35. *Id.* at 933; *see also Branigan v. Alex. Brown & Sons, Inc.,* 978 F.Supp. 547 (S.D.N.Y.1997).

36. *Merit Ins. Co. v. Leatherby,* 714 F.2d 673, 680 (7th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983); *Porush v. Lemire,* 6 F.Supp.2d 178, 186 (E.D.N.Y.1998)

37. Busscher Aff. Ex. A.

the Plan under ERISA, not that the NASD lacked jurisdiction.[38]

Third, to the extent the Panel dismissed the ERISA claim for lack of standing, petitioners have no basis for contending that the Panel ignored obvious and settled legal principles. The Second Circuit has construed 29 U.S.C. § 1132(a)(2) narrowly and has declined to add new groups who can bring suit under this provision other than those groups explicitly named.[39] Employee benefit plans are not mentioned in Section 1132(a)(2). Petitioners' arguments thus are inconsistent with the law of this circuit.[40]

Finally, the Second Circuit has said that: "The 'manifest disregard' test requires something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law. Manifest disregard of the law may be found ... if the arbitrator understood and correctly stated the law but proceeded to ignore it." [41]

There is not one scintilla of evidence that such was the case here.

*Basis of the Award*

Petitioners' final claim is that this Court should vacate the arbitration award because the Panel failed to delineate which parts of the award were based on standing, which on preemption and which on statute of limitations, thereby failing to render a final and definite award as required by the FAA.[42]

■ Arbitrators are not required to provide an explanation for their decision.[43] And the failure to state the reasons for an award is not a basis for vacatur if a ground for the arbitrator's decision can be inferred from the facts of the case.[44]

■ Here, the Panel gave an explanation for its decision:

"After considering the pleadings, the testimony and the evidence presented at the prehearing conferences, the undersigned arbitrators have decided in full and final resolution of the issues submitted for determination as follows:

Having considered the Respondents' Motions to Dismiss and arguments with regard to statute of limitations, standing, and preemption issues, the panel hereby grants the Motions of each Respondent to dismiss all claims." [45]

Thus, the Panel granted respondents' motions based on the arguments advanced. If further explication is required, one need only turn to the statement of claim and respondents' papers, which delineate which claims ought to be dismissed for reasons of standing, preemption and statute of limitations.

---

**38.** *See id.* Exs. L, M, N.

**39.** *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co., et al.,* 700 F.2d 889 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983); *see also Kinek v. Gulf & Western, Inc.,* 720 F.Supp. 275, 279 n. 1 (S.D.N.Y.1989), *aff'd,* 22 F.3d 503 (2d Cir.1994).

**40.** The speciousness of petitioners' claim is made evident by the fact that the case law they cite not only cites *Pressroom,* but stands for the same proposition. *See International Union of Bricklayers and Allied Craftsmen v. Menard & Co.,* 619 F.Supp. 1457 (D.R.I.1985) ("There is nothing in § 1132(a) which betokens any congressional intent to vest ERISA-spawned rights of action in any more broadly defined classes" other than those enumerated in § 1132(a)(2)).

**41.** *Willemijn Houdstermaatschappij, BV,* 103 F.3d 9, 12 (2d Cir.1997) (citations omitted).

**42.** 9 U.S.C. § 10(a)(4).

**43.** *Willemijn Houdstermaatschappij, BV,* 103 F.3d at 12 (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960)); *Koch Oil S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir.1985).

**44.** *Willemijn Houdstermaatschappij, BV,* 103 F.3d at 13.

**45.** Busscher Aff. Ex. A.

The Plan asserted nine claims in its complaint[46] against each of the five respondent brokerage firms, alleging that each was responsible for the Plan's losses at different periods of time.[47]

Respondents' only argument regarding standing was that a Plan cannot assert independently an ERISA breach of fiduciary duty claim pursuant to 29 U.S.C. § 1132(a)(2). This argument concerned the Plan's single ERISA claim and could have been the only standing argument to which the Panel referred.

Respondents' claim that ERISA preempts all other causes of action concerned all of the Plan's non-ERISA allegations. It was the only preemption argument asserted, and thus the only possible reference by the Panel to preemption. In consequence, the basis of the Panel's dismissal of those claims was not ambiguous.

Finally, EVEREN alone raised the statute of limitations claim in its first motion to dismiss.[48] EVEREN argued that, pursuant to 29 U.S.C. § 1113, claims for breach of fiduciary duty under ERISA are time-barred if brought later than three years after a claimant had actual notice of the alleged violation. And since Max Co. and Sichel were obliged to disclose the performance of the Plan's investments in each of 1990 and 1991 – the years in which EVEREN maintained the account – EVEREN claimed that the Plan was put on actual notice at that time. In consequence, EVEREN contended, the Plan's claims, made more than six years later in March 1997, were not timely.[49] While not

stated explicitly, this is an alternative basis for dismissing the ERISA claim asserted against EVEREN. This was the only statute of limitations argument advanced, and thus there can be no confusion as to which claim the Panel dismissed for this reason.

As discussed above the Panel is not required to give reasons for its decision, nor is it the duty of this Court to determine definitively the basis of the Panel's decision. It is enough if this Court can infer the bases of the Panel's decision.[50] This has been done. At most there was overlap in the dismissal of the ERISA claim against EVEREN on grounds of statute of limitations and on standing, that is, the two bases of dismissal were alternative holdings. This does not warrant, even remotely, vacatur.

*Conclusion*

The petition to vacate the arbitration award is denied. The Clerk will close the file.

SO ORDERED.

---

46. *See* Dennin Aff. Ex. A (breach of fiduciary duty under ERISA; five theories of fraud – suitability, fraudulent concealment, unauthorized trading, excessive trading and constructive fraud; violation of NASD rules; negligent misrepresentation; and failure to supervise).

47. Kemper and Bateman (together now EVEREN) maintained the account from January 1990 until December 1991; Paine Webber from January 1992 until September 1993; Kinnard from October 1993 until May 1994; and Texas Capital from June 1994 until October 1996.

48. EVEREN filed a motion to dismiss on June 6, 1997 as part of its answer to the statement of claim. Busscher Aff. Ex. D. Following the release of Sichel and Max Co. from the matter EVEREN filed a second motion to dismiss on September 25, 1997. *Id.* Ex. L.

49. *See* Busschar Aff. Ex. C.

50. *See Willemijn Houdstermaatschappij,* 103 F.3d at 13.